Ms. McGee. Good morning, Your Honors. My name is Kendra McGee. I'm an attorney for the City of San Jose, and I represent the appellant individual officers in this case. Your Honors, this case turns on the second prong of the Qualified Immunity Analysis. That is, whether the right at issue was clearly established such that an officer, a reasonable officer, would know that his conduct violated the Constitution, the Fourth Amendment in particular, in the circumstances that he faced on the evening of his encounter with the plaintiff. Can I ask a threshold question before we get there? I did not see an argument by the city that these officers should be treated differently, meaning perhaps Officer Dunn, there's a different analysis, because he was the officer in charge of the dog, right? That is correct, Your Honor. And this entire case turns on the actions of Officer Dunn, because the excessive force in this case, as a reminder, is the duration of the dog bite. Right, but I didn't see the city arguing that the other officers should be entitled to qualified immunity simply because they couldn't have participated, because they didn't have any control over the dog. Well, Your Honor, there is a footnote, I believe, in our brief, that the other officers are only in this case based on failure to intervene. So in order for them to be held liable in this case, Officer Dunn would first have to be held liable for the excessive force. I understand that, but if we find Officer Dunn liable, I think you have foreclosed any argument that we could find the other officers non-liable. I think you've presented this. I'm giving you an opportunity to rebut this, but I think you presented this case as they either all get it or none of them get it. Well, I think, Your Honor, if Officer Dunn is found liable, then the case probably could proceed on the intervention claim against the other officers based on the district court's current ruling. But that's not really the crux of the appeal here. The crux of the appeal here is focused on the actions of Officer Dunn. And I submit to this court that there is no case from this circuit or otherwise, frankly— What about the Miller case? The Miller case. The Miller case actually— That is a case. It is a case, and it benefits the defendant's arguments here. If anything, the Miller case is important and actually probably the most similarly— I mean, Miller, you're probably right on Miller. I meant Watkins. I think Watkins is the more applicable case. Sure. Let's shift to Watkins. Watkins is substantially dissimilar from the facts that are presented in this case. It is certainly not similar enough to warrant the dismissal or denial of qualified immunity. In Watkins, you had a situation where the canine handler had view of the plaintiff, pulled him physically out of the vehicle that he was hiding in while the dog was still engaged, and while other officers were surrounding him with their guns pointing, standing idly by, according to that case, doing nothing more than pointing their guns. That is not this case. In this case, Officer Dunn had to navigate a narrow staircase in the dark up to the top second level of this property that had not been searched, in addition to the fact that the plaintiff had not been searched. Okay, so you pointed out some factual differences, which is fair. We can look at those. But the holding in Watkins, which the officers are presumed to have read and understand and guide their future behavior, is that once the defendant or once the individual who's being arrested has surrendered and is under control, you cannot continue the bite. And so I don't understand how there's not a factual dispute here if we look to that statement of law, because he surrendered even before the dog bite happened, and then at that point he's down on the ground. I mean, how far did they need to go to where they said he was under control? Sure, Your Honor. Well, I think those are key differences in the sense that Watkins would not have advised Officer Dunn that what he did, let me back up, it would not have advised Officer Dunn that he needed to remove that dog any sooner than he did. And the element that's missing here and the standard that has come out of all these cases, from Mendoza all the way through 2021 and Hernandez, is exactly what Your Honor has just articulated, that you cannot keep a dog on an attack as long as the suspect is fully surrendered and, and the word and here is very important, under complete control. So is it right to say that the city's position is that this individual was not surrendered and under control until he was handcuffed? Well, the district court has pointed out a question of disputed faculty. I understand that. I'm just asking for your position, your client's position on when that standard was met here. That is, in fact, our position. But even more pointedly, our position So that they have to be handcuffed is the point at which a dog bite can be released? That's the city's position? No, Your Honor. I don't think that a suspect has to be handcuffed in order to be under complete control. I mean, I would agree because Watkins, you know, so the Watkins panel rejected the officer's argument there that because he had not shown his hands, he was not sufficiently under control. And the panel sent it back and said those are tribal questions. So I would agree with you that handcuffing a suspect is not the standard by which we determine the duration of the dog bite. Here you have circumstances that at best are tribal. He's laying prone on his belly. The video shows that the dog has, you know, stretched out his arms. There are officers with guns, you know, pointed at the suspect. And he contends from there on there's another 20 seconds or more in which the dog continued to bite. Why isn't that enough to at least let a jury decide whether he had surrendered and was under officer control? Well, there are two issues there that are wrong and unsupported by the evidence. One is this idea that the other officers, the first two officers up the stairs, were simply idly standing by having their guns pointed at him while the dog was engaged. I don't think it's idle. I think they had taken charge of the situation. They see that he's unarmed. He's laying prone on his belly. I don't think it's idle, right? They're serving a function in making sure that the dangerous situation or any risk has been mitigated. But what is the case law that you would rely on for the supposition that something more needs to happen as a matter of law in order to entitle the officers to qualified immunity? Well, I think if we go back to Miller, in that case this court specifically held that it was reasonable for the officer to keep the canine on the bite even after the suspect in that case had come out of the bushes and showed his hands. And the rationale there was that the threat that had initially presented itself, that is that this could be an armed suspect or a suspect that could arm himself in this dark, hidden location, was still present until the canine handler can ensure that that person is not armed and cannot reach for a weapon. But my understanding, Miller was the one, the case in the woods? It was. So my understanding was that the dog was released in Miller, found the suspect, and it took 45 to 60 seconds for the officers to arrive there. And within moments of seeing or seconds within seeing that he was unarmed, the dog was released. So, you know, again, person was not arrested or, you know, handcuffed at that point. But seeing that he was unarmed was sufficient for the officers to release the dog from the bite, whereas here the contention is the 20 or more seconds of continuing to bite while the officers were around the suspect. Sure, but we have to remember in those 20 seconds what's happening. Officer Dunn, who is the only person, by the way, in this group of people that is qualified to remove this dog, is still on that narrow staircase. All of the officers, in fact, are trying to get up into what ultimately wound up being a very narrow hallway surrounded by dark rooms. I'm sorry to interrupt, but not the 20 seconds that I think are the key to this case. The 20 seconds when he's lying flat on his belly, they have all gone up to the top, to the second floor, and they're around him at that point. That is not what the evidence here shows. It's not what the video shows, and it's, in fact, undisputed by the plaintiffs that Officer Dunn, when his video, you can first see the suspect on his video, that's about 20 seconds. He's still on that staircase, and you can hear him saying to the other officers, I've got to get in the room, I've got to get in the room. The import of Miller, I want to go back to Miller, because the import of Miller is that this court stated, the same argument was made there, that the dog should have come off the bite earlier because the plaintiff had shown his hands. This is important because it's where the element of control, which the district court, in our view, ignored, comes into play. The court there said it was reasonable to maintain the dog on the bite because a premature release of the dog could have resulted in the suspect arming himself, harm to the officer, harm to the dog, or a potential ambush. Yeah, but how is that harm present here? He was prone on the ground. They knew he, I mean, your position is they didn't yet know he was unarmed at that point? That is our position, Your Honor. The upstairs of that home had not been searched before their encounter. No, my question was not, was there a gun somewhere else? My question was, was he himself armed at that point? That was also unknown. However, the fact of the matter was, I mean, he hadn't been searched at that point, right? In addition to the fact that after— What if they had taken, you know, just another minute to get up the stairs and just, you know, lollygagged up the stairs? Would that have been a problem? They'd still be making the same argument. Well, we didn't know, so the, you know, 45 seconds— I mean, at some point it seems like once he's down on the ground, at least there's a disputed fact about whether he was under control or not. But that threat that the officers initially faced, worried that they were potentially facing a suspect who was armed or could have armed himself, was not mitigated by the sheer fact that the dog was on his one arm when his left arm was still free to reach potentially for a weapon in an area that he was familiar with and the officers were not familiar with. Ms. McGee, it seems to me that what you're arguing are ways to look at the evidence, you know, triable questions. And you may be right. You know, a jury might look at this and say it was reasonable to continue holding the bite because there needed to be something more to control the situation than was present. But in our interlocutory review—and one thing I wanted to mention about Miller is Miller was review from judgment in favor of the defendants. Here we don't weigh the evidence. We are just trying to determine if there are triable questions and if this issue is placed as a matter of law beyond debate. And what seems to me is what you're describing are things that different fact-finders can weigh differently as to what was reasonable or not. I disagree respectfully, Your Honor, and I'm sorry I did not tell the court, but I would like to reserve a few minutes for rebuttal if possible. I appreciate what you're saying, but I respectfully disagree because where is the case telling Officer Dunn here that he should have released that dog any sooner than he did? Watkins. But Watkins is substantially different. In Watkins, the officer was already in the room, had a view of the plaintiff, went hands-on with him, and again had other officers just standing around. Those are not the facts of this case. They are substantially dissimilar and certainly would not warrant the denial of qualified immunity under the Supreme Court standard. Okay. Do you want to reserve? I would like to reserve. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. Fulvio Quigna for Appellee Mr. Rosenbaum. We want to address, start off by addressing the Watkins case, which we do believe has put all officers in the Ninth Circuit on notice that an excessive, a bite of an excessive duration. Is it true in Watkins, and I just don't recall, he was not handcuffed before they released the dog. Is that correct? Absolutely, Your Honor. He was not handcuffed. And the reason why that's important to me is Mendoza does suggest that, you know, it was okay, in Mendoza we held that it was okay to keep the bite until he was handcuffed, until the defendant was handcuffed, or I guess plaintiff, depending on which case you're looking at. And so Watkins seems to backtrack from that and say, well, I mean, if Mendoza was just out there, I think they probably would be entitled to qualified immunity. Would you agree with that? I would agree with that. The Mendoza case, Your Honor, came out in 1994. There, almost as in dicta, the Court said, well, if someone were to be handcuffed and on the ground, you obviously wouldn't be able to stick a dog on them. Watkins actually addresses the point more clearly, and there the Watkins Court said, you know, if someone is helpless and surrounded by officers with guns drawn, where the suspect has surrendered and is under control, then you can't continue a dog bite. So they remove the element of needing to have handcuffs. So what do we do with the factual differences between Watkins and this case? Because the city makes a good argument that it was different. There was more of a sense of control, I think it's fair to say, in Watkins than there was here. You may disagree with me. Or, you know, at least more of a sense to observe it. And I guess part of that, maybe you can explain to me exactly what your position is on how much time, because it is true there was 20 seconds between when he was on the ground, but at what point was Officer Dunn actually there to see it and observe him? How long did the bite last? All right. First off, I'd like to say that we believe our case is much stronger than Watkins. In Watkins, the court held that the dog bite was unconstitutional in a situation where the officers alleged that they couldn't see the suspect's hands. Here, in Excerpt Record 26, which is the video that is on Officer Dunn's body camera. They can see it from the beginning. You can see his hands throughout. His hands were never, ever hidden from the officers. With respect to, you know, whether – Can I just quickly follow up on one point? Is there any question whether the officers knew that Mr. Rosenbaum was unarmed or armed by the time they were up there nearby him? Yes, Your Honor. As a matter of fact, in Excerpt Record 41, which is my deposition of Officer Dunn, I asked him, isn't it true that the fiancé actually informed you that Mr. Rosenbaum's firearms had burned in the Santa Rosa fires? And he agreed that that had been relayed to him. So with respect at least to firearms. Oh, I'm not really referring so much to that as – is there any indication that the officers thought once they're up there near him physically that he might still be unarmed? If I recall from the video, he was wearing something that would suggest that their, you know, clothing wouldn't obscure whether he had a firearm with him or not. He had a tank top on. Right. He had a tank top on. And to go back to the video, to ER 26, Officer Dunn deploys a canine at 1036 on the video, 10 minutes and 36 seconds. He issues the command, which I won't say here, but – and the dog goes up the video. Officer Dunn, again, just relying on the body cam. And remember, the body cam is set lower than Officer Dunn's eyes. So he's going upstairs. Presumably he can see before the body cam can see. I was going to ask just factually, is there anything in the record to indicate that the officer had a different view than the body cam he was wearing? No, Your Honor. The fact of the matter is at his deposition he testified that, yes, the body cam is chest worn. So when he arrived to the landing at 1051, we can see on the body cam, and presumably Officer Dunn can see as well, that Mr. Rosenbaum is in a seated position on the ground with the dog latched onto his arm. Immediately thereafter, Mr. Rosenbaum goes onto his belly, arms outstretched. And from 1051 through 1119, nearly 30 seconds, the bite continues. At 1119 is when Officer Dunn issues the order for release. The entire time, Mr. Rosenbaum's arms are outstretched and in front of him, and he's in a prone position. Does he ever try to stand up? No, Your Honor. He never tries to stand up. And we have to remember, unlike in Watkins, I guess, not only is Mr. Rosenbaum completely surrounded by officers up there, and, again, this notion that Officer Dunn is on the staircase is belied by the body camera. The body camera shows that Officer Dunn is on the second floor when he releases the dog. And Mr. Rosenbaum is surrounded by officers. The house is surrounded by officers. There's a chopper in the sky surrounding the house. I mean, he couldn't have been more controlled. Well, that only goes so far. I mean, if there was a weapon there, the fact that there was no escape didn't mean that the officers themselves wouldn't have faced some harm. So, I mean, I don't think the chopper indicates control. I think your argument for control, or certainly at least a factual dispute on control, is the fact that he was prone on the ground and the dog was biting him. And that's why I'm asking. I don't mean to shift gears so much, but you agree, I guess based on how the city's arguing. I don't understand, honestly, how the other officers can even be held liable here. It seems to me that if you have one officer who's in charge of the dog, you cannot rely on another officer to release the dog. And if they didn't have any opportunity to release the dog, now I know the district court held differently. Is that on appeal to us at all? Can we grant, can we deny qualified immunity to Officer Dunn, but grant qualified immunity to the others? That argument's not before the court. Our position is that it's been waived. We didn't even brief it because it wasn't in the appellant's moving papers. I think that's right, and I'm sort of shocked that it hasn't been briefed. It seems like a huge miss for these other officers. Anyway, keep going. Yes, and then. I guess I have one question that I'm sort of trying to puzzle through, and that is the rule is that once somebody has surrendered and is under control, then you've got to let the dog go. There is a timing factor there, right? So that can happen on second five, and then there's got to be some sort of period of time for an officer to recognize. Those are the circumstances. I need to call off the dog. Is that something that timing, you know, I guess twofold. Is there any evidence to indicate that we should be thinking about that in this case, that the officer somehow didn't understand those were the circumstances or that he was having a perception problem? No, there's no such facts that there was a perception problem. But going to the timing, again, I wanted to follow up on what Judge Sanchez said about the Miller case, Miller v. Clark County. In that case, and procedurally the posture is different from our case, but in that case the court found that there was no unlawful acts by the officers because they released the dog immediately. Here, nearly 30 seconds go by. That's an eternity while you have a dog causing the kind of damage that you see. So that's your position is that because of the time frame here, we don't really even need to wrestle with that because it's just too long? Yes. Well, but you say 30 seconds, but I don't think it's 30 seconds from when he was under control. I mean, I guess that's the question we have to grapple with, and maybe we only need to grapple with it so far as to say it's a factual dispute that, you know, at what point he became under control. But at what point after Officer Dunn got to the top of the stairs, how much longer did the dog bite go, or do we know, or that's a factual dispute? Our position is that from the 10-51 mark through 11-19, that's the time that Mr. Rosenbaum is prone, arms outstretched. So you think there's 27 seconds where he was prone on the ground, Officer Dunn could observe him prone on the ground? Yes. And this is from the body camera. I was going to say, to me, I think that the important point here is about our interlocutory review, is because we have to credit plaintiff's allegations as true unless they are plainly contradicted by the video evidence under Scott v. Harris. And as I understand your complaint, or the plaintiff's complaint, plaintiff alleges that he had fully surrendered and hands were outstretched while surrounded with all the defendants with their firearms, but the dog was allowed to continue biting him for over 20 seconds. And that is enough. Just passing that 20-second threshold was enough to be excessive force. So whether it ends up being 25 seconds, 20 seconds, 30 seconds, whatever a trial would establish, that that's enough to establish a constitutional violation and the video doesn't contradict it. Yes, that's our position. And our further position is that the district court got it right. At the very least, this is a tribal issue, a fact for the jury to determine at this point. But as to the purely legal question of were the officers on notice, we think Watkins puts them squarely on notice. No further questions that we submit, Your Honors. Okay, thank you. Thank you. Thank you, Your Honors. I want to go back to the issue or the standard here of having the suspect fully surrendered and fully under control and what this appeal is actually about, which is is there a case that would have informed Officer Dunn that Mr. Rosenbaum was fully surrendered and under control in this scenario? And the answer is no. The court has never defined what that means in this context. And for that reason, Officer Dunn is entitled to qualified immunity. Watkins is not that case. The facts of Watkins are substantially different. At most, what we can take from Watkins is that an officer cannot stand idly by with their guns drawn giving commands that the plaintiff cannot comply with because that was another important factor in Watkins. Those are not the facts of this case. And so for that reason, Officer Dunn is entitled to qualified immunity and the other officers are as well if he is found not to be liable here. Thank you, Your Honors. Thank you. Thank you to both counsel for your arguments in the case, and the case is now submitted. The court will take a brief five-minute recess. Thank you.
judges: NELSON, FORREST, SANCHEZ